Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
Tina Hays
12/28/2012 3:37:00 PM
Filing ID 5052164

Steven E. Harrison No. 010632
sharrison@hhlaw-az.com
N. Patrick Hall No. 023246
phall@hhlaw-az.com
HARRISON & HALL PLLC
2158 N. Gilbert Road, Suite 113
Mesa, Arizona 85203
Telephone (480) 339-4439
Facsimile (480) 339-4441

*Attorneys for Plaintiffs*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| STEVEN SPIKER and DENISE SPIKER, husband and wife, | CV2012-092237 |
| Plaintiffs, | |
| v. | |
| SANJIVAN, P.L.L.C. d/b/a "BUCKEYE MEDICAL CLINIC," an Arizona professional limited liability company; KAREN PADILLA AND JOHN DOE PADILLA, wife and husband; WAL-MART STORES, INC., a Delaware corporation; WAL-MART TRANSPORTATION, LLC, a foreign LLC; WAL-MART ASSOCIATES, INC., a Delaware corporation; STEPHEN KRACHT, D.O. and JANE DOE KRACHT, husband and wife; JOHN DOES I-V AND JANE DOES I-V, husband and wife; WHITE CORPORATIONS I-V, | **FIRST AMENDED COMPLAINT** |
| | *(Assigned to the Hon. Emmet J. Ronan)* |
| Defendants. | |

Plaintiffs Steven Spiker and Denise Spiker allege for their First Amended Complaint

against Defendant Sanjivan, PLLC d/b/a Buckeye Medical Clinic ("BMC"), Defendants Karen

Page 1

Padilla and John Doe Padilla, Defendant Wal-Mart Stores, Inc., Defendant Wal-Mart Transportation, LLC, Defendant Wal-Mart Associates, Inc. (collectively "Wal-Mart"), and Stephen Kracht, D.O. and Jane Doe Kracht, as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiffs are residents of Maricopa County, Arizona.

2.     Defendants caused events to occur in Maricopa County, Arizona, which gave rise to this lawsuit.

3.     Jurisdiction and venue in this Court are appropriate.

4.     Upon information and belief, Defendant Sanjivan, P.L.L.C. (Buckeye Medical Center), is an Arizona professional limited liability company doing business in the State of Arizona.

5.     Upon information and belief, Defendant Wal-Mart Stores, Inc. is a Delaware corporation doing business in the State of Arizona.

6.     Upon information and belief, Defendant Wal-Mart Transportation, LLC is a foreign LLC doing business in the State of Arizona.

7.     Upon information and belief, Defendant Wal-Mart Associates, Inc. is a Delaware corporation doing business in the State of Arizona.

8.     Upon information and belief, Defendants White Corporations I-V are business entities doing business in Arizona and/or having minimum contacts in the State of Arizona pursuant to Rule 4.2, Arizona Rules of Civil Procedure. The true names of White Corporations I-V are currently unknown, but will be supplemented once their true identities are ascertained.

9.     Upon information and belief, Defendants Karen Padilla and John Doe Padilla are wife and husband and are residents of Maricopa County, Arizona.

10.     At all relevant times, Defendants Karen Padilla and John Doe Padilla were acting for and on behalf of their marital community.

11.     Upon information and belief, Defendant Karen Padilla is a licensed health care provider pursuant to A.R.S. § 12-561(a).

12.     At all relevant times, Defendant Karen Padilla was acting within the course and scope of her employment with Defendant BMC and/or White Corporations I-V.

13.     BMC and/or White Corporations I-V are independently and/or vicariously liable for acts or omissions Defendant Padilla committed while acting within the course and scope of her employment with BMC and/or White Corporations I-V.

14.     Upon information and belief, Defendant Stephen Kracht, D.O. and Jane Doe Kracht are husband and wife and are residents of Johnson County, Kansas.

15.     Defendant Kracht has established minimum contacts in the State of Arizona pursuant to Rule 4.2, Arizona Rules of Civil Procedure.

16.     At all relevant times, Defendant Stephen Kracht, D.O. and Jane Doe Kracht were acting for and on behalf of their marital community.

17.     Upon information and belief, Defendant Stephen Kracht, D.O. is a licensed health care provider pursuant to A.R.S. § 12-561(a).

18.     At all relevant times, Defendant Stephen Kracht, D.O. was acting within the course and scope of his employment with Defendants White Corporations I-V.

19.     Defendant White Corporations I-V are independently and/or vicariously liable for acts or omissions Defendant Kracht committed while acting within the course and scope of his employment with Defendant White Corporations I-V.

20.     Upon information and belief, Defendants John Does I-V and Jane Does I-V were residents of Maricopa County, Arizona, and at all relevant times, they were acting for and on behalf of their respective marital communities. The true names of Defendants John Does I-V and Jane Does I-V will be supplemented if/when they are ascertained during discovery.

21.     At all relevant times, Defendants John Does I-V and Jane Does I-V were acting within the course and scope of their employment with Defendant BMC, Defendant Wal-Mart, and/or Defendant White Corporations I-V.

22.     Defendant BMC, Defendant Wal-Mart and/or Defendant White Corporations I-V are independently and/or vicariously liable for the negligence of Defendants John Does I-V and Jane Does I-V as alleged in this Complaint.

## GENERAL ALLEGATIONS

23.     Plaintiffs incorporate each of the allegations set forth above as if fully set forth herein.

24.     Plaintiff Steven Spiker is a former truck driver for Defendant Wal-Mart who was making approximately $92,500 per year, not including other significant health and retirement benefits, at the time of his wrongful termination.

25.     During the course of approximately 7 years of employment with Wal-Mart, Mr. Spiker was asked to submit to several random drug tests.

26.     Prior to September of 2011, Mr. Spiker passed all of his random drug tests.

27.     On the morning of September 2, 2011, Plaintiff Steven Spiker was instructed by his employer, Defendant Wal-Mart, to submit to a random drug test at BMC.

28.     Mr. Spiker reported to BMC as instructed by Wal-Mart and provided a urine sample as directed by BMC.

29.     Unfortunately, Defendants individually and collectively failed to exercise reasonably prudent care to ensure that Mr. Spiker's sample was validly collected, labeled, stored, shipped, and/or tested.

30.     For example, Defendant BMC failed to establish a proper chain of custody by violating federal regulations set forth under 49 C.F.R. § 40.71, which require specimen collectors such as BMC to place seals onto the specimen bottle before having the specimen donor sign or initial the seals.

31.     In addition, Defendants BMC and Wal-Mart individually and collectively failed to follow other reasonable procedures, rules, and regulations. For example, Defendants Wal-Mart and BMC individually and collectively failed to take reasonable steps to ensure that Defendant Karen Padilla and other employees of BMC were properly credentialed and trained under federal regulations such as those set forth under 49 C.F.R. § 40.33.

32.     Likewise, Defendant Steven Kracht, who was employed as the Medical Review Officer ("MRO") in this case, failed to take reasonable steps to execute his duties as MRO and failed to ensure that Mr. Spiker's urine sample was validly collected, labeled, stored, shipped and/or tested.

33.     Upon information and belief, Defendant Kracht did not satisfy the required credentials, basic knowledge, training, and responsibilities outlined in the federal regulations

set forth under 49 C.F.R. § 40.121 *et seq*. For example, Defendant Kracht failed to act as an "independent and impartial 'gatekeeper' and advocate for the accuracy and integrity of the drug testing process," as required by 49 C.F.R. § 40.123(a).

34.     Upon information and belief, Defendants willfully disregarded their duties and lack of compliance with federal drug-testing regulations with knowledge that Mr. Spiker would likely sustain significant damages as a result, including the loss of his employment and irreparable damage to his public reputation and driving record.

35.     Prior to September 2, 2011, Mr. Spiker had passed every random drug test that had ever been ordered during his entire 7 years of employment with Wal-Mart.

36.     Upon learning of the purportedly positive drug test results, Mr. Spiker voluntarily underwent a second, more comprehensive drug test through a hair-testing laboratory. This second test came back completely clean, which confirmed that the results of his September 2, 2011 urine test were invalid.

37.     Upon investigating the circumstances surrounding his false positive drug test from September 2, 2011, Mr. Spiker discovered significant discrepancies in the chain of custody, including obvious flaws on his Drug Testing Custody and Control Form ("CCF").

38.     Even after these discrepancies were brought to Defendants' attention, Defendants individually and collectively failed to take any corrective action or take any other other reasonable steps to invalidate the false test results.

39.     As a result, Mr. Spiker was terminated from his employment with Wal-Mart.

40.     Mr. Spiker was 45 years old at the time of this incident and reasonably expected to work for Wal-Mart for at least 20 more years.

41.   Defendants' conduct also damaged Mr. Spiker's commercial driving record on file with the United States Department of Transportation. As a result, Mr. Spiker's past, present, and future earning capacity has been adversely impacted.

42.   In addition, Mr. Spiker is now subject to inconvenient and time-consuming restrictions and requirements put in force by the Department of Transportation.

43.   Following his termination from Wal-Mart, Mr. Spiker was unemployed for approximately 8 weeks.

44.   Although Mr. Spiker has found new employment, his annual salary is approximately $45,000 less than the annual salary he was making with Wal-Mart. In addition, Mr. Spiker no longer enjoys the same level of health and retirement benefits he enjoyed as an employee of Wal-Mart.

45.   Defendants' negligence also damaged and defamed Mr. Spiker's public and professional reputation, making it difficult if not impossible for Mr. Spiker to advance in his chosen profession.

46.   Defendants' negligence has caused injuries to Plaintiffs, both individually and collectively as a married couple, including significant lost earnings, lost financial benefits, emotional distress, humiliation, embarrassment, fear, stress, loss of enjoyment of life, and inconvenience.

## COUNT 1 – NEGLIGENCE
### (All Defendants)

47.   Plaintiffs incorporate each of the paragraphs above as if fully set forth herein.

48.   Each of the Defendants had a duty to exercise reasonable care during the process of implementing and administering a drug testing program, collecting urine samples,

preserving a valid chain of custody and/or otherwise ensuring accurate drug test results by overturning or invaliding drug tests that Defendants knew or should have known were invalid.

49.     Each of the Defendants breached their duty of reasonable care by failing to satisfy their respective duties during the course of implementing and administering a drug testing program, collecting Mr. Spiker's urine sample, preserving a valid chain of custody and/or ensuring accurate drug test results by overturning or invalidating drug tests that Defendants knew or should have known were invalid.

50.     Defendant Wal-Mart failed to ensure that its collection site, BMC, and the collection site's employees, including Defendant Padilla, were properly credentialed and trained under federal regulations such as those set forth under 49 C.F.R. § 40.33.

51.     Defendant BMC failed to ensure that its employees, including Defendant Padilla, were properly credentialed and trained.

52.     Defendant Padilla failed to exercise reasonable care and follow federal regulations during the collection of Mr. Spiker's urine sample by failing to follow the instructions set forth on the Drug Testing Custody and Control Form and by failing to ensure that Mr. Spiker's urine sample bottles were sealed prior to having Mr. Spiker sign and date the bottles.

53.     Defendant Steven Kracht failed to properly investigate obvious discrepancies in the chain of custody of Mr. Spiker's urine sample.

54.     Defendant Steven Kracht also failed to properly investigate obvious problems with the credentials and training of BMC's employees, including Defendant Padilla.

55.     The negligence of Defendants Karen Padilla and Stephen Kracht and their respective employers fell below the degree of care, skill, and learning expected of reasonable, prudent medical practitioners or professionals acting under the same or similar circumstances.

56.     Pursuant to A.R.S. § 12-2603, Plaintiff certifies, based on information currently known, that this matter *does not* require expert opinion testimony to prove Defendants' standard of care and/or liability for Plaintiff's claims.

57.     All of the Defendants individually and collectively failed to take reasonable corrective action to remedy the acts and omissions outlined above.

58.     As a proximate result of Defendants' independent and collective negligence during the course of collecting and testing Mr. Spiker's urine sample, Mr. Spiker's urine sample was either contaminated or mistakenly identified, which resulted in a false positive drug test result and his subsequent termination from employment with Wal-Mart.

59.     As a result of Defendants' acts and omissions, Plaintiffs have suffered significant damages, including the damages outlined in the general allegations above.

60.     The amount of Plaintiffs' damages will be determined by a jury at trial.

61.     Upon information and belief, Defendants willfully disregarded their duties to exercise reasonable care with spiteful disregard that Plaintiffs would likely suffer significant and irreparable harm.

62.     Defendants' willful disregard of a known and substantial risk of harm justifies an award of punitive damages in an amount to be determined at trial by a jury.

## COUNT 2 – NEGLIGENT TRAINING AND SUPERVISION
### (Defendants Wal-Mart and BMC)

63.     Plaintiffs incorporate each of the allegations above as if fully set forth herein.

64.     Defendants Wal-Mart and BMC had duties to exercise reasonable care during the course of training and supervising any employees who participated in administering, collecting, labeling, storing, shipping, and/or testing Mr. Spiker's urine sample.

65.     Defendants Wal-Mart and BMC breached their duties to exercise reasonable care during the training and supervision of their employees by failing to ensure that BMC and its employees were properly credentialed and trained in accordance with federal regulations such as those set forth under 49 C.F.R. § 40.33.

66.     As a result of Wal-Mart's and BMC's negligent training and supervision, Plaintiffs have suffered significant damages, including the damages described in the general allegations above.

67.     The amount of Plaintiffs' damages will be determined by a jury at trial.

68.     Upon information and belief, Defendant Wal-Mart and Defendant BMC willfully disregarded their duties to exercise reasonable care during the training and supervisions of their employees or agents with spiteful disregard that Plaintiffs would likely suffer significant and irreparable harm.

69.     Defendants' willful disregard of a known and substantial risk of injury justifies an award of punitive damages in an amount to be determined at trial by a jury.

WHEREFORE, Plaintiffs pray for judgment against each of the Defendants, individually, jointly, and severally, for reasonable compensatory damages, including general and special damages in an amount to be determined by a jury, punitive damages in an amount to be determined by a jury, taxable costs, interest, and all other relief the Court deems equitable and proper.

DATED this 28th day of December, 2012.

HARRISON & HALL PLLC

By:   /s/ N. Patrick Hall
      N. Patrick Hall
      *Attorneys for Plaintiffs*

ELECTRONICALLY filed this 28th
day of December, 2012

COPIES mailed this same date to:

Kent E. Turley, Esq.
TURLEY CHILDERS HUMBLE
    & TORRENS, PC
3101 N. Central Avenue, Suite 1300
Phoenix, AZ 85012
*Attorneys for Defendants Padilla*
    *and Buckeye Medical Clinic*

By___/s/ B. Spalla_____